UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

DAWN C. VAN DOSEN,

                        Plaintiff,                    Civil Action No.: 12-cv-12438
                                                    Honorable Gerald E. Rosen
        v.                              Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                         Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [17, 19]

Plaintiff Dawn Van Dosen brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") properly assessed Van Dosen's credibility and did not err in not recontacting one of her treating physicians, and his decision is supported by substantial evidence of record. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [19] be GRANTED, Van Dosen's motion [17] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On September 28, 2007, Van Dosen filed an application for DIB, alleging disability as of February 17, 2007.  (Tr. 145-49).  The claim was denied initially on March 23, 2008.  (Tr. 124-28).  Thereafter, Van Dosen filed a timely request for an administrative hearing, which was held on December 15, 2009, before ALJ Paul Armstrong.  (Tr. 520-549).  Van Dosen, represented by attorney Donald Shiffman, testified, as did vocational expert ("VE") Luann Castellana.  (*Id.*).  On April 30, 2010, the ALJ found Van Dosen not disabled.  (Tr. 13-38).  On April 6, 2012, the Appeals Council denied review.  (Tr. 6-9).  Van Dosen filed for judicial review of the final decision on June 6, 2012.  [1].

### B.     Background

#### 1.     Disability Reports

In an October 10, 2007 disability report, Van Dosen reported that the conditions preventing her from working include a lumbar fusion, back pain, bladder and nerve spasms, and thyroid problems.  (Tr. 196).[1]  She reported that she fell at work, injuring her back.  (*Id.*).  Van Dosen reported that these conditions interfere with her ability to sit, stand or walk for a "long time," lift anything heavy, or pull or push.  (*Id.*).  She reported being treated by numerous doctors, and taking Percocet and Oxycotin for pain, Valium for spasms, and Elmorin for her bladder. (Tr. 198-201).

In an October 24, 2007 adult function report, Van Dosen reported that her day consists of letting out her dogs, and returning to bed with something to drink and medications.  (Tr. 38).

---

[1] The ALJ found, and Van Dosen does not challenge on appeal, that her thyroid condition was not "severe" within the meaning ascribed to that term under the Regulations.  Therefore, the Court will not discuss evidence as it relates to her thyroid condition.

She then watches television until 2 p.m., eats lunch, takes a shower and waits for her husband to return home "to help me with anything else."  (*Id.*).  She reported that her husband grocery shops and pays bills and her daughters and son clean the house, feed the animals and do laundry.  (Tr. 39).  She prepares quick meals, taking 10-15 minutes, and is able to drive short distances.  (Tr. 40-41).  She reported no problems with personal care, but that her pain wakes her up during the night.  (Tr. 38).  She reported no longer being able to play with her kids or dogs, dance, vacation, or go out to eat due to her conditions.  (Tr. 42-43).  She now talks with friends, goes to the doctor and sometimes watches her daughters' sporting events.  (Tr. 42).

Van Dosen reported that her conditions interfere with her ability to lift, bend, stand, walk, sit and kneel.  (Tr. 43).  She can walk only "a few minutes" before needing to stop and rest.  (Tr. 43).  She did not report interference with her ability to squat, reach, or climb stairs, or with her mental abilities in any way.  (Tr. 43-44).  In fact, Van Dosen reported "always" being able to pay attention, that she could follow instructions "very well," and got along "very well" with authority figures.  (*Id.*).  She also reported a "fair" ability to handle stress and a good ability to handle changes to her routine.  (Tr. 44).  She reported having been prescribed a seat for her shower, a Spinal-Stim and a back brace.  (*Id.*).

In a June 6, 2008 disability appeals report, Van Dosen reported that her condition had worsened since her last report, and that she had a neck fusion in the interim.  (Tr. 168).  She reported being much more limited in her daily activities, although her description of her limitations mirrors what she had previously reported.  (Tr. 168; 172) (family members take care of chores, shopping and finances).  She reported continuing oxycodone and Percocet for pain, as well as taking cyclobenzaprine as a muscle relaxer and Lunesta to aid sleep.  (Tr. 171).

In a November 2, 2009 medical treatment report, Van Dosen reported continuing

treatment by the surgeon who performed her fusions, as well as by a pain management specialist and a psychiatrist who was treating her for "bipolar condition and sleep problems." (Tr. 164). On the same day, Van Dosen submitted a list of her medications, which included morphine and Magnacet for back pain, and Cymbalta, hydroxyzine and oxcarbazepine for mood stabilization. (Tr. 158).

   2.   *Plaintiff's Testimony*

Van Dosen testified at the hearing that she had previously been a bus driver who took on some custodial work in off-hours for overtime pay. (Tr. 525-26). While performing this work, specifically moving boxes down stairs on a dolly, she fell and hurt her back. (Tr. 526). She ultimately had two fusions, one in her lumbar spine and one in her neck. (*Id.*). She testified that the fusion in her neck was very successful, with only some occasional numbness or tingling occurring in her hands, but that the lumbar fusion was not successful. (Tr. 526; 532). Her surgeon had recommended a repeat surgery but she had declined because she could not be guaranteed a good outcome. (Tr. 526). Instead, she is being treated with injections and pain medication. (Tr. 528).

Van Dosen testified that she can only walk for 10-15 minutes at a time before her legs and feet begin to go numb and the pain increases. (*Id.*). She reported similar symptoms from sitting too long. (*Id.*). The symptoms are relieved when she lies down. (*Id.*). She is unable to lift more than 5-10 pounds. (*Id.*; Tr. 532). She testified that she lives with her husband and two daughters, and while she can drive short distances for some groceries, her husband does the weekly grocery shopping. (Tr. 528-29). She testified to being able to load the dishwasher and wipe counters, but that her husband mops the floors and her children vacuum and do laundry. (Tr. 529). She enjoys watching her daughters' sporting events, but does not travel with the team

4

out of state.  (Tr. 530-31).  She also does not visit her family's vacation house because she cannot "stay in the car for three hours."  (Tr. 537).  She testified to falling in November 2008 and re-aggravating her condition because she was pushing herself too hard.  (Tr. 535-36).  She was prescribed a cane but does not wish to use it.  (Tr. 540).

Van Dosen testified that she has bad days and "really, really bad days," the latter of which number approximately 20 a month.  (Tr. 544).  On those days she does not get out of bed before her medications take effect.  (Tr. 545).  The quality of her days is affected by the weather and her activity level the day before.  (*Id.*).  When asked if she felt like she could perform a sit-down job, Van Dosen testified that she did not believe she could, as sitting for a long period of time makes it hard for her to get up.  (Tr. 535).  She also testified that she would need to be able to lie down at work, and that she could not concentrate very well due to the pain and the effects of her medications.  (Tr. 542).

Van Dosen testified that in addition to pain management, she sees a counselor for depression caused by her conditions.  (Tr. 536-37).  She also testified to having a bladder condition that causes her to need to use the restroom more often than normal.  (Tr. 533).

### 3.   *Medical Evidence*

#### a.   *Treating Sources*

On February 17, 2007, Van Dosen slipped and fell on some stairs while rolling a dolly at work and injured her back.  (Tr. 338).  At an appointment at Concentra Medical Center two days later, she described the pain as aching, originating in her lower back, radiating to her right leg and exacerbated by activity.  (*Id.*).  Upon exam, Van Dosen was tender to palpation over her right paraspinals and her range of motion was decreased to 45 degrees of forward flexion.  (*Id.*).  A straight leg raising test was negative, and heel/toe walk was performed with difficulty.  (*Id.*).

5

An x-ray of her lumbar spine was negative.  (*Id.*).  She was prescribed ibuprofen and physical therapy and released on no work, as there was "no light duty available."  (Tr. 339).  Van Dosen had follow-up appointments on February 22 and 26, and March 5 and 12, 2007.  (Tr. 342-47).  She continued to complain of pain, but noted that the radicular symptoms had resolved.  (*Id.*).  Physical therapy had not improved her condition.  (*Id.*).  She remained tender to palpation upon examination and had a limited range of motion.  (*Id.*).

On March 7, 2007, Van Dosen presented to Dr. Robert Ho, a neurosurgeon, and Terri Jones (his physician assistant), complaining of a significant increase in her back pain since the fall, rating the pain a 9/10.[2]  (Tr. 403).  She described the pain as emanating from her lumbar region and radiating to her tailbone and right buttocks.  (*Id.*).  She denied any parestheisas.  (*Id.*).  She reported that any movement exacerbated her symptoms.  (*Id.*).  Dr. Ho reviewed the x-ray taken of her lumbar spine on February 19, 2007, and found "degenerative changes with spondylolisthesis at L5/transition of vertebral body."  (Tr. 402).  Upon examination, he found her gait normal, strength full and that she was able to heel and toe walk.  (Tr. 403; 405).  He restricted her bending, lifting and twisting, as well as her neck flexion and extension.  (Tr. 405).  He noted that she was "on temporary no work status while rehabilitation is done due to injury."  (*Id.*).  He discontinued her use of Vicodin and prescribed Percocet.  (Tr. 406).  While she reported no improvement from physical therapy, Dr. Ho reminded her that her lumbar x-ray was normal and these injuries often take some time to heal.  (*Id.*).  Van Dosen returned on April 4, 2007, continuing to complain of pain that rated 9/10 in intensity.  (Tr. 409-10).  She reported that the Percocet had not improved her condition and she was beginning to get depressed.  (*Id.*).  Her

---

[2] It appears from the records that Van Dosen was already being treated by Dr. Ho for both lower back pain and cervical pain.  Records from 2006 and early 2007 reveal diagnoses of cervical disc rupture, splondylolisthesis, and lumbosacral and cervical/brachial radiculitis.  (Tr. 489-519).

examination revealed no change and Dr. Ho ordered a cervical spine x-ray, noting that Van Dosen's workman's compensation clinic had ordered both a thoracic and lumbar MRI.  (Tr. 412-13).  He prescribed Cymbalta and Ambien to help Van Dosen's mood.  (Tr. 413).

An April 13, 2007 MRI of Van Dosen's cervical spine revealed "[d]isc osteophyte coraplexes and herniations from C4 through C7 with effacement of the ventral margin of the thecal sac.  There is no significant spinal stenosis or signal abnormality within the cord."  (Tr. 416).  X-rays of the same area revealed "limited mild mid-cervical spine degenerative change." (Tr. 417).  Dr. Ho conducted follow-ups on May 7, May 30, and June 27, 2007.  (Tr. 418-39).  At each appointment, Dr. Ho noted that Van Dosen's gait and station were normal, and she was able to heel and toe walk.  However, he noted hypersensitivity to pinprick on her left last three digits and, at the May 7 appointment, a positive Tinel's test.  (*Id.*).  He continued to treat her with Percocet.  (*Id.*).

During the same period of time, Van Dosen was treated by physiatrist Dr. Albert Belfie, at the behest of her worker's compensation clinic.  (Tr. 385-86).  At her initial appointment on March 19, 2007, Dr. Belfie diagnosed a thoracic, lumbar, and hip myofascial strain, prescribed Skelaxin and physical therapy, and kept Van Dosen on no activity.  (Tr. 386).  Results of a thoracic and lumbar MRI were negative for a herniated disc or compression fracture, but revealed mild degenerative disc disease and minimal end-plate changes degeneratively.  (Tr. 383-84; 371-72).  Dr. Belfie treated Van Dosen four more times in April 2007.  (Tr. 377-82). During that period, after trying additional medications, Dr. Belfie ultimately administered a series of trigger point injections and referred Van Dosen to a neurosurgeon for a second opinion regarding the degenerative changes seen in her spine.  (Tr. 377-82).

Van Dosen presented to neurosurgeon Dr. Glen Minster on June 21, 2007, complaining

of pain in her back rating 9/10 in intensity. (Tr. 485-86). Dr. Minster noted a slow reciprocal gait, tenderness upon palpation, pain with flexion and extension and a positive straight leg raising test on the right side. (Tr. 485). Strength was 4/5, "secondary to pain." (*Id.*). He reviewed her previously taken x-rays finding that they "demonstrate disc collapse at the L5-S1 level with a spondylolisthesis at L4-5" and that there was a "mild central canal and foraminal stenosis noted at L4-5." (*Id.*). He recommended epidural injections, but noted that Van Dosen would "likely require a surgical decompression and fusion if this continues to be severe and disabling for her." (Tr. 486). On August 24, 2007, Van Dosen underwent the fusion surgery from L4-S1, initially with good results (Tr. 298-99; 332-33; 366-67). On January 18, 2008, she underwent a second fusion from C4-C7 to repair a cervical disc herniation with stenosis. (Tr. 293-97; 332). Her cervical fusion ultimately resolved her symptoms emanating from that area of her body, although it took some time to heal fully. (Tr. 290; 292) (remarking on improvement made shortly after surgery in February 2008, including resolution of cervical radiculopathy); (Tr.242) (Van Dosen reported in May 2008 that her "neck and arms are doing well"); (Tr. 231-32) (2009 treatment notes finding significant improvement in Van Dosen's neck and arms, and that she is "getting more active and doing activities with her family"). Progress reports indicated improvement, and Van Dosen was instructed to continue engaging in light activities. (Tr. 213-36; 242; 290-91).

However, beginning in approximately May 2008, Van Dosen complained of pain in her lower back. At her appointments, she began exhibiting tenderness in her lumbar spine, (Tr. 233-37; 240-43), pain with flexion and extension (Tr. 233-34; 236-37; 240-41), and at least at one appointment was documented with a slow reciprocal gait. (Tr. 241).[3] Initially, Dr. Minster

---

[3] Van Dosen underwent a number of x-rays, MRIs and CT scans of her cervical and lumbar spine

recommended continued physical therapy, anti-inflammatory medications and Lidoderm patches. (Tr. 21-42). He also placed her on total disability from April 10 through June 15, 2008. (Tr. 289). However, in August 2008 Dr. Minster felt Van Dosen "may have a pseudarthrosis of the L5-S1 level." (Tr. 237). He discussed treatment options, including medications and trigger point injections "versus revision fusion at L5-S1." (*Id.*). In September 2008, Van Dosen reported that her pain was "tolerable and improving," so Dr. Minster decided to continue with an exercise program versus additional interventions. (Tr. 236). In November 2008, after a fall, Van Dosen reported a flare-up of her pain, resulting in a mild straight leg raising test on the right side. (Tr. 235). However, Dr. Minster found that Van Dosen had "good flexion, extension and rotation of her neck…no upper extremity motor or sensory deficits…a mild straight leg raising test on the right side…no motor deficits in the lower extremities." (*Id.*). Dr. Minster thus characterized Van Dosen's pain flare-up as "temporary." (*Id.*).

In January 2009, Van Dosen reported further improvement of her pain, stating that "she is getting more active and doing activities with her family." (Tr. 234). Dr. Minster continued a conservative course of treatment. (*Id.*). In February 2009, Dr. Minster added Mobic to Van Dosen's medications, believing inflammation to be the source of her continued back pain, and recommended she stop smoking. (Tr. 232). In April 2009, Van Dosen reported continued back numbness and "occasional leg numbness" that "limit[s] her activities at times." (Tr. 231). At this appointment, Van Dosen had good flexion and extension of her lower back, even with some tenderness to palpation. (*Id.*). Dr. Minster recommended pain management. (*Id.*).

Van Dosen began treating with pain management specialist Dr. William Kole on April

---

to check the status of her hardware post fusion, given her complaints of continuing pain. Each of those images showed no loosening or failure of the hardware, and that the remainder of the lumbar and cervical spines were normal. (Tr. 231; 233-35; 238-39; 240; 243; 285-88).

29, 2009.  (Tr. 279-84).  She reported moderate to severe lower back pain, aching, shooting, throbbing and stabbing in nature that radiated to her lower extremities.  (Tr. 279).  She reported her current pain as a 5/10, but a 9/10 without medication and a 3/10 with medication.  (*Id.*).  The pain was aggravated by various activities and relieved by "medication, cold weather and laying [sic] down."  (*Id.*).  Upon examination, Dr. Kole noted decreased range of motion in the thoracic and lumbar spine and sensation in the left lower extremity.  (Tr. 280-81).  He also noted pain elicited on a straight leg raising test, but otherwise good strength and reflexes.  (Tr. 280-81).  Dr. Kole assessed Van Dosen as "status post cervical fusion with 100% relief of her pain" and "status post lumbar fusion with very good relief of one type of pain," (Van Dosen reported that a second type of pain was not relieved by the surgery).  (Tr. 279; 281).  He also assessed disc displacement and radiculopathy and prescribed morphine and Magnacet for pain.  (Tr. 281).  Van Dosen was seen again on May 27, 2009, where her current pain was described as a 6/10, and where Dr. Kole managed her medications after examination.  (Tr. 276-77).  Van Dosen reported no side effects to these medications.  (Tr. 277).

At a follow-up on June 22, 2009, Van Dosen described her pain as a 2/10.  (Tr. 273).  Dr. Kole again managed her medications after examination.  (Tr. 274).  He also listed her prognosis as stable and her disability status as "Yes, Total & Permanent".  (*Id.*).  At a July 20, 2009 follow-up, Van Dosen listed her current pain level as a 2/10, and her highest since her last visit as an 8/10.  (Tr. 269).  After examination, Dr. Kole managed her medications, listed her prognosis as "stable," and her disability status as "Yes, P[atien]t disabled by another physician."  (Tr. 270).  He also noted that Van Dosen was unable to walk more than 200 feet, shop for groceries, prepare her own meals, or perform housework.  (*Id.*).  At an August 17, 2009 follow-up, Van Dosen rated her lowest pain level since her last visit as a 2/10, but did not rate her current pain level.

(Tr. 265). Dr. Kole continued her medications after examination. (Tr. 266). He did not render a prognosis or an assessment of her disability status or her functionality, but the computer generated treatment notes appear to have listed every possible option for those questions. (*Id.*). For example, after the question about prognosis, the notes read, "Good, Fair, Poor, Improving, Stable." (*Id.*). All the options are also listed for the questions regarding disability status and restrictions. (*Id.*).

Van Dosen returned to Dr. Minster in August 2009, reporting further improvement in her back pain due to her participation in pain management. (Tr. 230). She reported that the narcotics she was taking were "controlling her pain effectively," and she had "very little limitations in activities." (*Id.*). Her lumbar spine remained tender and she had a limited range of motion. (*Id.*). Dr. Minster continued to believe her symptoms to be the result of pseudoarthrosis and he discussed treatment options. (*Id.*). However, Van Dosen decided that "because of her significant improvement and minimal limitations she will continue with current management at this time." (*Id.*). Dr. Minster recommended follow-up on an as-needed basis. (*Id.*).

Van Dosen returned to Dr. Kole on September 14, 2009, complaining of pain that she rated a 9/10. (Tr. 261). After examination, Dr. Kole continued her medications, had her schedule an epidural injection and gave her samples of Lyrica. (Tr. 262). He listed her progress as stable, her disability status as having been classified disabled by another physician, but listed her ability to walk more than 200 feet, shop for groceries, prepare her own meals and do housework as "Yes, w/o help." (*Id.*). Van Dosen underwent an epidural injection the next day, resulting in "much reduced" pain and resolution of her right leg tingling. (Tr. 260). On that same day, Dr. Kole examined her and assessed that she was not able to perform any of the functions that he had previously listed as "Yes, w/o help" the day before. (Tr. 257). At a follow-

11

up on September 23, 2009, Van Dosen listed her pain as a 3/10 and her highest since her last visit as a 7/10. (Tr. 250). After examination, Dr. Kole issued another epidural injection, managed her medication and recommended follow-up "on a[n] as needed basis." (Tr. 251; 254). Van Dosen was seen again on October 7, 2009. (Tr. 246-47). She described her current pain level as 3/10 and her worst since her last visit as a 7/10. (Tr. 246). She reported no further leg pain after her epidural injections, but continued lower back pain. (*Id.*). After examination, Dr. Kole administered another epidural injection, continued her medications, found her totally and permanently disabled, and found her incapable of the activities listed in previous treatment notes. (Tr. 247; 249).

On October 29, 2009, Dr. Minster completed an "Attending Physician's Statement of Disability." (Tr. 225-26). He noted that Van Dosen's condition was the result of an illness and not a work-related injury.[4] (Tr. 225). He diagnosed her with lumbar disc w/o myelopathy displacement and lumbago. (*Id.*). He noted that she was being treated through continued x-rays and pain management. (*Id.*). He limited Van Dosen to sitting, standing and walking "as tolerated," no lifting or carrying, no reaching or working overhead, no pushing or pulling and driving as tolerated. (Tr. 226). He opined that Van Dosen became disabled on January 18, 2008,[5] and was "totally disabled through 12/31/09." (*Id.*).

On November 12, 2009, Dr. Kole completed an "Attending Physician's Statement of Disability." (Tr. 227-28). He diagnosed Van Dosen with lumbar disc displacement with right lower extremity radiculopathy that was the result of a work injury. (Tr. 227). He noted objective

---

[4] Van Dosen wrote a note accompanying Dr. Minster's opinion, stating that Dr. Minster incorrectly labeled her condition as the result of an illness rather than a work injury. (Tr. 224).

[5] Van Dosen wrote a note accompanying Dr. Minster's opinion stating that he mistakenly listed her onset date as January 18, 2008 (notably the date of her cervical fusion), when she asserts it should have been February 17, 2007, (the date of her accident). (Tr. 224).

findings including CT scans, MRIs and examination results including limited range of motion of the lumbar spine and pain with a straight leg raising test. (*Id.*). He limited Van Dosen to no more than 10 minutes of standing and no prolonged walking, and stated that she needed a sit/stand option. (Tr. 228). He also limited her to lifting/carrying and pushing/pulling no more than 5 pounds. (*Id.*). He found she could not reach or work overhead. (*Id.*). She had no limitation in driving, nor was she limited in her keyboard use other than to account for her need to change positions at will and "rest as needed." (*Id.*). Although Dr. Kole issued these functional limitations, he noted that, "The patient needs a functional capacity evaluation for clear objective" findings. (*Id.*). He concluded that Van Dosen became unable to work due to her condition on February 17, 2007. (*Id.*).

Van Dosen also sought treatment with Dr. Raul Guerrero, a psychiatrist. (Tr. 216). She was referred by a pain psychologist. (*Id.*). Van Dosen reported depression since her accident due to pain and family difficulties resulting from her not working. (*Id.*). She reported bouts of anger, lack of concentration, and sleep and appetite disturbances. (*Id.*). Upon examination, Van Dosen presented with a depressed affect and sad mood, and she cried throughout the interview. (*Id.*). Dr. Guerrero diagnosed Van Dosen with dysthymia, rule out major depression, bipolar disorder and organic mood disorder, and issued her a Global Assessment of Functioning ("GAF") of 50, noting that "last year about the same." (Tr. 217). He noted that hormonal issues and family dynamics contributed to her mood deregulation, in addition to her pain symptoms. (*Id.*). He started her on Lamictal and issued her a "fair" prognosis. (*Id.*). At a follow-up appointment on September 3, 2009, Dr. Guerrero changed Van Dosen's medications to Cymbalta and Abilify, as she reported feeling too sedated on Lamictal. (Tr. 214). At her next appointment on October 2, 2009, Van Dosen was distressed and crying due to her son's decision to join the

military and deploy overseas.   (Tr. 213).   Dr. Guerrero managed her medications.   (*Id.*).   On October 20, 2009, Van Dosen presented with fluctuating moods and reported not responding well to the medication.   (Tr. 210).   Dr. Guerrero again changed her medication and recommended a follow-up.   (*Id.*).   Dr. Guerrero saw Van Dosen again on November 10, 2009, noting "considerable improvement in terms of stability of the moods, though she is on the low side." (Tr. 208).   He continued her medications and recommended a follow-up.   (*Id.*).

> b.      *Consultative and Non-Examining Sources*

Van Dosen underwent a consultative examination pursuant to her worker's compensation claim with Dr. Terry Weingarden on August 23, 2007, the day prior to her lumbar fusion.   (Tr. 351-56).   Upon examination, Dr. Weingarden noted pain, but no spasm in the lumbosacral region. (Tr. 354).   A straight leg raising test was negative and Van Dosen had strong flexion and abduction of the hips.   (*Id.*).   She was able to toe and heel stand, and extend and laterally tilt her back.   No weakness was noted.   (*Id.*).   He reviewed her x-rays and MRI reports and concluded that her condition was not related to her work accident, but to disc degeneration in general.   (Tr. 355-56).   When prompted by requests for possible reassessment pursuant to additional medical records, Dr. Weingarden maintained his conclusion about the source of Van Dosen's condition. (Tr. 357-60).

Dr. Weingarden re-examined Van Dosen on June 30, 2008.   (Tr. 300-307).   Upon examination, he found no tenderness in her lumbar region upon palpation and noted no spasms. (Tr. 303).   Senses and reflexes were normal.   (*Id.*).   He concluded that Van Dosen was status post lumbar fusion with "minimal anterior spondylolisthesis."   (Tr. 304).   He maintained that this condition was not caused by her work accident.   (*Id.*).   He restricted her to no more than 20 pounds lifting and no repetitive bending and recommended she be weaned off Percocet.   (*Id.*).

14

Van Dosen underwent a consultative physical exam on February 14, 2008, with Dr. A. Sadiq.  (Tr. 324-29).  She complained of chronic radicular low back pain.  (Tr. 324).  Upon examination, Dr. Sadiq noted a flattening of the lumbar lordosis and tenderness in the lumbosacral spine from L4 to the coccyx.  (Tr. 325).  He noted no spasms and a negative straight leg raising test.  (*Id.*).  Van Dosen's muscle strength, senses and reflexes were all normal.  (*Id.*).  She was able to dress and undress, get on and off the table, and ambulate without assistance.  (*Id.*).  Her gait was normal, but she was not capable of heel, toe, or tandem walking, or squatting.  (*Id.*).

On March 15, 2008, Dr. Muhammad Khalid completed a physical RFC assessment for Van Dosen based on a review of the records.  (Tr. 313-20).  He concluded she was capable of lifting 10 pounds frequently and 20 occasionally, standing and/or walking six hours of an eight hour day and sitting for the same amount, and unlimited pushing and pulling.  (Tr. 314).  She could occasionally climb ramps or stairs, and occasionally bend, stoop, kneel, crouch and crawl.  (Tr. 315).  She could never climb ladders, ropes or scaffolds.  (*Id.*).  He found no other limitations.  (Tr. 315-320).

### 4.    *Vocational Expert's Testimony*

The VE testified at the hearing that Van Dosen's past work as a bus driver is classified s medium and semi-skilled, her work as an office manager is sedentary and skilled, and her work as a motor vehicle assembler is medium and unskilled.  (Tr. 541).  The ALJ then asked the VE to imagine a hypothetical claimant of Van Dosen's age, education and vocational background who was limited to sedentary work with a sit/stand option and who needed access to a bathroom three times a day at regular intervals.  (*Id.*).  He asked the VE whether there were jobs in the national economy that such a person could perform.  (Tr. 543).  The VE testified that such an individual

15

could perform the jobs of surveillance system monitor (1,000 positions in the region), sorting and inspecting work (1,000 positions) and packaging (1,000 positions).  (*Id.*).  The ALJ then added a limitation that the claimant was limited to simple, unskilled jobs due to an inability to concentrate as a result of pain and medication side effects.  (*Id.*).  The VE testified that such a person could still perform the jobs previously identified.  (*Id.*).  The ALJ then added a limitation of an inability "to concentrate on even a simple, unskilled job, for an average of 15 minutes out of every hour."  (*Id.*).  The VE testified that such a limitation would preclude work.  (Tr. 544). The ALJ then modified the hypothetical to include simple, unskilled work, but that the claimant had to lie down for at least an hour during the day, at irregular intervals, in addition to normal breaks.  (*Id.*).  The VE testified that this would again preclude work.  (*Id.*).  The ALJ then asked if work would be precluded if the hypothetical claimant missed three or more days of work a month.  (Tr. 545).  The VE testified that it would.  (Tr. 546).

### C.     Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic

work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D.      The ALJ's Findings**

Following the five-step sequential analysis, the ALJ concluded that Van Dosen was not disabled.  At Step One he determined that she had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 27).  At Step Two he found the following severe conditions: "degenerative disc disease of the back and neck, bladder problems, and depression."  (*Id.*).  At Step Three he determined that none of her conditions, either alone or in combination, met or medically equaled a listed impairment, specifically analyzing them under Listing 1.04 (Disorders of the Spine) and Listing 12.04 (Affective Disorders).  (Tr. 28).  In making this determination, the ALJ found that Van Dosen had mild restrictions in activities of daily living and in social functioning, moderate difficulties with concentration, persistence and pace, and no episodes of

17

decompensation of extended duration.  (Tr. 28-29).  The ALJ then assessed Van Dosen's RFC, finding her capable of "sedentary work . . . with the following exceptions:  the claimant must be limited to simple, unskilled work, with a sit/stand option."  (Tr. 29).  At Step Four he found that given Van Dosen's RFC, she would not be capable of returning to any of her past work.  (Tr. 36).  At Step Five the ALJ concluded that, given her age, education, vocational background and RFC, and considering VE testimony, the ALJ concluded that there were a significant number of other jobs in the regional economy that Van Dosen could still perform.  (Tr. 37).  Therefore, she was not disabled.  (Tr. 38).

### E.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide

18

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F.    Analysis

Van Dosen's brief is more form than substance.  Although she asserts that she is lodging complaints against the way the ALJ assessed her symptoms and credibility, as well as his application of the treating physician's rule (Plf. Brf. at 4), she offers only the barest of arguments to support her assertions.  Instead, she writes page upon page of block quotes from various cases and regulations, failing (in most instances) to explain the relevance of that language to the facts

19

at hand.  The failure to properly develop her arguments could permit this Court to deem them waived.  *See Martinez v. Comm'r of Soc. Sec.* No. 09-13700, 2011 U.S. Dist. LEXIS 34436 at *7 (E.D. Mich. Mar. 2, 2011) *adopted by* 2011 U.S. Dist. LEXIS 34421 (E.D. Mich. Mar. 30, 2011) (noting that "[a] court is under no obligation to scour the record for errors not identified by a claimant" and "arguments not raised and supported in more than a perfunctory manner may be deemed waived") (citations omitted).  However, because this Court can generally interpret Van Dosen's alleged errors, it will address them, in turn, below.

### 1.     Evaluation of Symptoms and Credibility

The Sixth Circuit has held that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate evaluation as to her credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Thus an ALJ's credibility determination will not be disturbed "absent compelling reason."   *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  When a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible.  *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4 at *3, 1996 WL 374186 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

Van Dosen argues that the ALJ erred in relying on boilerplate language to support his finding that her subjective statements regarding her pain and functionality were not fully credible.  She cites to the portion of the ALJ's ruling where he states that Van Dosen's "medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with [her] residual functional capacity assessment."  (Tr. 31).  She then cites a Western District of Washington case for the proposition that the use of this language alone is insufficient to support a credibility determination.  *See Emmons v. Astrue*, 2012 WL 2005070 (W.D. Wash. 2012).  The Court need not go so far geographically to find a case supporting this straightforward proposition.  *See Barbera v. Astrue*, No. 11-13265, 2012 U.S. Dist. LEXIS 87401, *42-44 (E.D. Mich. June 5, 2012).

At any rate, Van Dosen's argument is misplaced because it can hardly be said that the ALJ here relied solely on the boilerplate language cited above to support his assessment of her credibility.  Instead, the ALJ set forth Van Dosen's subjective reports and testimony, (Tr. 30-31), and then painstakingly chronicled her medical treatment.  (Tr. 31-34).  He then spent half a page specifically discussing the evidence supporting his view of her credibility.  (Tr. 34).  He found her partially credible due to her statements regarding her need to change positions and not spend much time standing and/or walking.  (*Id.*).  He found her less than credible with regard to her other alleged functional limitations based on the objective medical evidence, including the subjective ratings of pain she reported to Dr. Kole and the reported improvements in her functionality as documented by Dr. Minster.  (*Id.*).  The ALJ fulfilled his duty in assessing Van Dosen's credibility and his assessment is supported by substantial evidence in the record.  *See Barbera*, 2012 U.S. Dist. LEXIS 87401 at *42-44 (affirming ALJ's credibility determination where he went beyond boilerplate language to detail reasons for discounting claimant's credibility).

Van Dosen argues that the ALJ selectively cherry-picked the record in order to support

his conclusion that she was not disabled, alleging that, "The ALJ here concentrated on the parts of the record where Plaintiff was found to have made improvement.  Improvement compared to what?"  (Plf. Brf. at 10).  She goes on to recite almost two single-spaced pages of 20 C.F.R. § 404.1529(c)(1), which lays out how ALJ's should evaluate a claimant's symptoms, and concludes that, "The ALJ must apply a Social Security Ruling."  (*Id.* at 10-12).  Again, this unremarkable proposition is of no consequence here.  The ALJ did not, in fact, cherry pick the record only to highlight the portions where Van Dosen exhibited improvement.  Rather, the ALJ thoroughly discussed all of the relevant medical evidence and testimony, including Van Dosen's continued use of narcotic medication and recent flare-ups of her pain.  However, he ultimately found that the record as a whole showed steady improvement in Van Dosen's condition resulting in non-disabling limitations that were accounted for in his RFC.  (Tr. 34-35).  Indeed as outlined in the background section above, the record as a whole supports the ALJ's finding of a steady improvement in Van Dosen's condition from the date of her surgeries forward, both in terms of pain and mood.

With regard to her pain, the ALJ specifically noted that as time went on, Van Dosen's pain was significantly lessened, to the point where she was rating it a 2-3 out of 10 and repeatedly referring to it as "tolerable."  (Tr. 32-33).  She also reported to Dr. Minster that she was enjoying more activities and suffering fewer limitations as time went on.  (Tr. 32; 230).  *See e.g., supra* at 10-11 (citing August 2009 treatment notes indicating that medications were "controlling her pain effectively;"[6] "very little limitations in activities;" "because of her significant improvement and minimal limitations she will continue with current management at this time.").  As the ALJ noted, Van Dosen continued to be on several strong narcotics to manage

---

[6] The ALJ properly considered Van Dosen's ability to control the severity of her symptoms with medication and treatment.  See 20 C.F.R. §404.1529(c)(3)(iv)-(v).

her pain, but he found that this comported with his RFC determination that she should be limited to simple, unskilled work at the sedentary level.  (Tr. 34).  With regard to her mental state, although there are fewer records from which to draw conclusions, those available do note a continued improvement in Van Dosen's moods as Dr. Guerrero found a combination of medications and dosages that worked for her.  (Tr. 34).  Indeed, her last treatment record showed a marked improvement in her mood regulation, and that Dr. Guerrero was now ready to focus on getting her newly-leveled mood to a more positive state.  (*Id.*).

In sum, the ALJ's thorough decision shows that, contrary to Van Dosen's assertion, he properly reviewed the record as a whole when passing on her credibility.  All of the foregoing evidence was documented by the ALJ, and he properly used both the positive and negative findings to justify his credibility determination and the RFC he assessed, which included the substantial limitation to certain sedentary work with a sit/stand option.  See SSR 96-9p, 1996 WL 374185, at *3.  The ALJ's findings are thus supported by the substantial evidence.[7]

### 2.     *Treating Physician Rule*

Finally, Van Dosen argues that the ALJ violated the treating physician rule.[8]  Specifically

---

[7] At the end of her brief, Van Dosen makes a cursory argument that the ALJ erred in extrapolating her increased ability to engage in daily activities with an ability to work outside the home full time, which the Court interprets as an additional attack on the ALJ's credibility determination.  While it is true that "a claimant's ability to perform daily activities and chores does not lead to the inevitable conclusion that the claimant is not disabled," (*Edwards v. Comm'r of Soc. Sec.*, 74 Soc. Sec. Rep. Service 604, *4 (E.D. Mich. June 29, 2001) (citing *Walston v. Gardner*, 381 F.2d 580 (6th Cir. 1987), and others)), that is not the basis of the ALJ's conclusion here.  Instead, ALJ relied not only on Van Dosen's increased ability to engage in activities, but also her subjective reports of pain level and tolerance and objective measures of her improved condition, including mood regulation, medication effectiveness, and test results.

[8] Van Dosen appears to be arguing not about the "treating physician rule," which provides that an ALJ must give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in the case record," *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

she argues that the ALJ should have re-contacted Dr. Minster when he appeared confused at the hearing as to why the doctor might recommend additional surgery for Van Dosen's back after her continued complaints of pain following the first fusion.  The Court does not agree that the record supports a duty to re-contact Dr. Minster.

20 C.F.R. § 404.1527(c)(3) requires an ALJ to recontact a treating physician only when he or she cannot ascertain the basis of the physician's opinion from the record.  "Under this regulation, absent a finding of inconclusive or 'insufficient evidence to decide whether [a claimant is] disabled' an ALJ is not required to recontact a treating physician."  *McNelis v. Comm'r of Soc. Sec.*, No. 08-12529, 2009 U.S. Dist. LEXIS 89792 at *26 (E.D. Mich. Sept. 29, 2009) (quoting 20 C.F.R. § 404.1527(c)(3)).  Here, although the ALJ informally mentioned a concern about Dr. Minster's suggestion of additional surgery at the hearing, he did not do so in a way that expressed "confusion" as to Dr. Minster's opinion about Van Dosen's residual functionality.  Instead, the ALJ's decision makes clear that he was aware of the reasons for Dr. Minster's opinion, and fully explained why he rejected that opinion.  (Tr. 35) (giving only "slight weight" to Dr. Minster's opinion because of errors made by him in completing the form, and because the "completely restrictive nature of the opinion" did not "correlate with his treatment notes or the objective findings").  *See also, supra* at 8-11, 22.  In other words, the ALJ did not question Dr. Minster's opinion because it was unclear (in which case recontacting the doctor may have been appropriate), but rather because it was inconsistent with the other substantial

---

541, 544 (6th Cir. 2004) *quoting* 20 C.F.R. § 404.1527(d)(2), but rather that the ALJ should have recontacted Dr. Minster for additional details about his opinions.  However, to the extent Van Dosen is arguing that Dr. Minster's finding that she was disabled (Tr. 226) is entitled to controlling weight, that argument lacks merit.  20 C.F.R. §404.1527(d)(2) makes clear that such an opinion by a treating physician is not a "medical opinion," but rather a legal opinion on an issue reserved to the Commissioner.  Such legal opinions by doctors "are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 WL 374183, at *2.

record evidence. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010) (ALJ not required to recontact treating physician whose "opinion was deemed unpersuasive not because its bases were unclear, but because they were not corroborated by objective medical evidence"). Thus, this is not a situation where the ALJ lacked the foundation to properly analyze a treating doctor's opinion, but one where he found that the objective evidence belied that doctor's conclusion.

## III.   CONCLUSION

For the foregoing reasons, and because substantial evidence of record supports the ALJ's conclusion, the Court **RECOMMENDS** that Van Dosen's Motion for Summary Judgment **[17]** be **DENIED**, the Commissioner's Motion **[19]** be **GRANTED** and this case be **AFFIRMED.**


Dated: July 17, 2013                                   s/David R. Grand
Ann Arbor, Michigan                                  DAVID R. GRAND
                                                                 United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to

E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 17, 2013.

s/William Barkholz for Felicia M. Moses
FELICIA M. MOSES
Case Manager
